IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Caitlin Sjöstrand,                          :

            Plaintiff          :        Civil Action 2:11-cv-00462

    v.                                      :

The Ohio State University,                  :        Magistrate Judge Abel

            Defendant          :

# Opinion and Order

This matter is before the Court on defendant The Ohio State University's ("OSU") September 17, 2012 motion for summary judgment (doc. 27). As a preliminary matter, plaintiff's January 2, 2013 motion to strike and motion for leave to file a surreply to defendant's reply memorandum (doc. 42) is GRANTED in part and DENIED in part. Plaintiff's motion to strike is DENIED. Plaintiff's motion for leave to file a surreply is GRANTED.

## I.    Uncontradicted Testimony and Allegations in the Complaint

At the age of six, plaintiff Caitlin Sjöstrand was diagnosed with Crohn's disease, an inflammatory bowel disease causing inflammation of the lining of the digestive tract. Compl. at ¶5. Despite having Crohn's disease, plaintiff excelled academically with few accommodations, and in June 2007, plaintiff graduated *summa cum laude* from Granville High School. *Id.* at ¶5; Sjöstrand Dep., p. 47, Doc. 20, PageID 166. She attended the Ohio State University, Newark branch, and earned a Bachelor of Science in Psychology

degree in just two and a half years. Sjöstrand maintained a grade point average of nearly 3.8 and graduated in December 2009 *magna cum laude. Id.* at ¶7; Sjöstrand Dep., p. 47, PageID 156.

In the fall of 2009, Sjöstrand applied to be a Ph.D. candidate in the OSU School Psychology Program. This was the only program she applied to. Sjöstrand Dep., p. 2, PageID 160. She testified that she decided her junior year in high school that she wanted to be a school psychologist and "assist children, educationally, academically within the school system, and be a liaison between parents, students, teachers, and administrators . . . . " *Id.*, p. 10, PageID 157. She had some knowledge about school psychologists because her father worked many years as one. She wanted to use her experience with Crohn's disease to benefit others. She believed that as an independent contractor she could work as a school psychologist as well as offer her services to parents who had children with behavioral problems. *Id.,* pp. 11-13, PageID 157. She had no desire to be a school counselor. *Id.*, p. 16, PageID 158. In her application, she explained that her experience working with school officials to obtain accommodations for her Crohn's disease impacted her decision to seek a career in school psychology. *Id.* at ¶8. Plaintiff earned a score of 1110 on the GRE, scoring 550 on the Qualitative section and 560 on the Verbal section. The School Psychology Program required a minimum score of 500 on each section. *Id.* at ¶9. Plaintiff was asked to participate in an interview as part of the application process. *Id.* at ¶10. On February 26, 2010, plaintiff was interviewed by two faculty members. *Id.* at ¶11. During each interview, the faculty members questioned

plaintiff at length about her ability to handle the stress and workload of the program given that she had Crohn's disease. *Id.* at ¶12.

Approximately two weeks after her interview, plaintiff was notified that she had not been admitted to the program. *Id.* at ¶13. Plaintiff made several telephone inquiries as to the reason she was denied admission. Plaintiff spoke with Timothy Graham, the Academic Program Coordinator for Students Services at the School of Physical Activity & Education Services. *Id.* at ¶14. Mr. Graham stated that the application materials indicated that she did not fit with the program, which he acknowledged was vague given her excellent credentials. Mr. Graham advised plaintiff to contact Dr. Laurice Joseph. *Id.* at ¶15.

On April 7, 2010, plaintiff spoke with Dr. Joseph. Dr. Joseph said that she did not have plaintiff's file in front of her, but it appeared that plaintiff's interests were better suited to school counseling rather than school psychology. *Id.* at ¶16. Plaintiff responded that she knew the difference between school counseling and school psychology, and she asked what she could do to convince Dr. Joseph that she wanted to pursue a career in school psychology. *Id.* at ¶17. Dr. Joseph was unable to provide plaintiff with specific information, but she advised plaintiff to revise her personal statement if she decided to reapply. *Id.* at ¶18.

On April 8, 2010, plaintiff sent an email to Dr. Donna L. Pastore, the Director of the School of Physical Activity and Educational Services with the College of Education and Human Ecology. In her email, plaintiff questioned whether she had been denied

3

admission because she had Crohn's disease. In her response, Dr. Pastore stated that the decision was made objectively and that the committee felt that plaintiff's interests and motivation were a better match for counseling rather than school psychology. *Id.* at ¶20.

After OSU denied her admission, plaintiff was accepted to the School Psychology program at Kent State University. *Id.* at ¶21.

### II.    Arguments of the Parties

#### A.    Defendant The Ohio State University

Defendant maintains that Ms. Sjöstrand has failed to make a prima facie case of disability discrimination under the ADA and the Rehabilitation Act. OSU maintains that plaintiff has failed to present evidence from which a reasonable jury could conclude that she suffered an adverse action under circumstances which give rise to an inference of disability discrimination. Defendant maintains that the two facts plaintiff has provided do not meet the evidentiary requirements of a prima facie case. According to OSU, the only facts on which plaintiff relies to establish a prima facie case are: (1) when she called OSU upon receiving the rejection letter, the two individuals with whom she spoke did not give her specific reasons for the rejection; and (2) she was asked about Crohn's disease, which she voluntarily disclosed, at her interviews with Drs. Joseph and Radliff.

With respect to the telephone calls, the responses of Mr. Graham and Dr. Joseph are not evidence that could give rise to an inference of discrimination. Defendant maintains that their deposition testimony demonstrates that the reason that they did not

4

give plaintiff a detailed explanation for the denial was because, at that point, they did not know the reason. Mr. Graham did not serve as a reviewer of the decision. Rather, Mr. Graham's role included creating and maintaining individual application files and submitting the decision into the student information system to generate a decision letter for the applicant.

Dr. Joseph testified that by the time that he spoke with plaintiff on the telephone, he did not have her application file in front of him and no longer recalled the specific reason that she was not accepted. Defendant maintains that Dr. Joseph's lack of specificity was a result of not having access to her file.

Defendant further argues that Drs. Joseph and Radliff's questions to plaintiff during the interviews do not constitute evidence that could give rise to an inference of discrimination. The questions asked by Drs. Joseph and Radliff do not constitute a violation of either the ADA or the Rehabilitation Act. Defendant argues that plaintiff inaccurately contends that most of the interview with the professors focused on her ability to successfully complete the program due to her disability. Plaintiff testified in her deposition that 7-10 minutes of the 20 minute interview concerned her disability, which falls well short of "most of the interview." Plaintiff also testified that she was asked 7 of the 12 application questions, not just the ones bearing on her disability. Defendant argues that Drs. Joseph and Radliff simply were asking questions following up her responses to the applicant questions.

Defendant argues that plaintiff's academic qualifications were not "stellar" or "outstanding" compared to the other applicants, and her qualifications do not constitute evidence giving rise to an inference of disability discrimination. Although plaintiff states that she had the best undergraduate GPA of the nine applicants, this is not exactly true as she and another applicant were essentially tied. Additionally, her undergraduate GPA was not significantly better than five of the eight other applicants, all of whom achieved a 3.5 or better. Defendant contends that plaintiff's GRE scores are no better than middling compared to the other applicants. Plaintiff achieved a combined average of 555, and the applicant with the highest combined average of 707 was not even interviewed. Plaintiff asserts that she outshines the other applicants because she completed her undergraduate degree in two and a half years, but there is no evidence in the record that the length of time that it took an applicant to complete her degree was assigned any particular value by the faculty. Although evidence of comparative qualifications may be probative of pretext, this evidence itself is insufficient to raise a genuine issue of fact of discriminatory motive. When there is little or no probative evidence of discrimination, plaintiff must show that her qualifications were so significantly better that no reasonable person would not have chosen her. Simply being qualified or marginally more qualified than a successful candidate is insufficient to raise a genuine issue of fact as to pretext.

Defendant maintains that the evidence shows that the faculty applied their own list of necessary objective qualifications in reaching their decision not to admit plaintiff.

6

Each applicant was asked to answer the same applicant questions and judged on the content of their answers. Faculty used an admissions checklist rating each applicant on 14 criteria, including commitment to school psychology, fit with program philosophy, and fit with faculty research interests. Plaintiff's identification of a school counseling faculty member as her preferred mentor and her stated interest in counseling did not demonstrate the commitment to school psychology to the faculty. Defendant argues that plaintiff has no evidence that the faculty evaluated her according to criteria that was made up as they went along, and there is no basis for an inference of discrimination.

Defendant maintains that informing applicants of the rigors of graduate study does not constitute evidence of a discriminatory attitude toward individuals with disabilities. These statements were made to all the applicants and not directed at plaintiff individually. Plaintiff's reliance on a stray remark by an unnamed student is inadmissible.

OSU argues that plaintiff cannot establish that its legitimate, nondiscriminatory reason for denying her admission is pretextual. Defendant's reason for rejecting plaintiff's application was that she did not fit the program. According to defendant, plaintiff has not shown that OSU could not have had an honest belief in its proffered reasons for denying her admission to the program. An after-the-fact explanation of what she meant by her answers to the applicant questions cannot be used to demonstrate pretext. The faculty were not obliged to ask Sjöstrand follow up questions

7

to concerns they had regarding her responses. Pretext cannot be established by proving that the faculty's decision did not take into consideration facts it did not know. Evidence that a different faculty member would have questioned her about the urban focus of the program does not mean that the failure of other faculty members to do so establishes pretext. Even if Drs. Joseph and Radliff were under the mistaken impression that plaintiff was more interested in school counseling than school psychology, they had no duty to question her in order to clarify any misunderstanding. Additionally, any after-the-fact statements made by Sjöstrand concerning her lack of desire to become a counselor cannot be used to demonstrate pretext. Any attempt by plaintiff to say that her responses were interpreted in a different manner than intended cannot be used to show that the professors did not believe their own nondiscriminatory reasons. If the decisionmaker had an honest belief in the basis for the decision and the belief arose from reasonable reliance on particularized facts, the reason is not pretextual even if it was erroneous.

Defendant maintains that plaintiff's efforts to demonstrate that the faculty could not have had an honest belief in their stated reasons is also without merit.

### B. Plaintiff Caitlin Sjöstrand

Plaintiff argues that she has established a prima facie case of disability discrimination in violation of the ADA and the Rehabilitation Act. Plaintiff maintains that the evidence creates an inference that OSU denied her admission to the school psychology program because of her disability. Plaintiff relies on her telephone

8

conversations with Professor Joseph and Mr. Graham as evidence of discriminatory intent. Professors Joseph and Radliff focused their interviews on plaintiff's ability to participate in the Ph.D. program and handle the stress of a doctoral program given that she had Crohn's disease. The focus of the interview was her Crohn's disease.

Plaintiff maintains that the evidence creates an inference that OSU denied her admission to the school psychology program because of her disability because she was more qualified that the other candidates for admission. Plaintiff maintains that Professor Joseph failed to provide any concrete explanation for her denial. According to plaintiff, the faculty expressed a general concern about students missing class and specifically questioned the impact Crohn's disease would have on plaintiff's class attendance. In an April 15, 2010 letter, Professor Pastore expressed the faculty's concern with the ability of the students to handle the demands of the program.

Plaintiff argues that OSU's alleged legitimate, nondiscriminatory reasons for denying her admission to the program are pretextual. According to plaintiff, defendant admitted Ms. Evanovich although she did not meet the minimum requirements for admission, nor did she intend to work with students in academic setting. Despite their alleged concerns regarding plaintiff's "lack of fit" with the program, Professors Joseph and Radliff never discussed their concerns with her during the interview.

Plaintiff argues that she can establish pretext because OSU provided changing and false explanations for denying her admission. Plaintiff maintains that she had no desire in counseling adults or students and that she expressed a strong interest in the

9

program's mission. Plaintiff simply identified Professor Granello as a potential mentor because of their shared experience in traveling and working with different cultures; she was not interested in counseling. Plaintiff's limited research experience played no role in OSU's decision to deny her admission although this was raised as a potential explanation in Professor Joseph's April 13, 2010 email to Professor Pastore. According to plaintiff, this reason was simply concocted after the fact to justify her denial. This reason was removed from the April 22, 2010 letter that was sent to plaintiff demonstrating that there was no legitimate basis for this explanation. Plaintiff further argues that her limited experience with children in a school setting or with children in urban areas also played no part in the decision denying her admission. Plaintiff's research interests included working with diverse populations, understanding cultural differences, working with students with physical and mental disabilities, being an advocate for students and their families, and viewing students holistically. Neither Professor Joseph or Professor Radliff ever questioned her about her research interests or reason for selecting Professor Granello as a potential mentor. According to plaintiff, this alleged reason for her denial was not raised until litigation commenced. Plaintiff maintains that OSU's shifting explanations for her denial demonstrate that the reasons provided are pretextual.

Plaintiff argues that she "fit" the research interests of Professors Radliff and Miranda and that OSU's assertion that she was denied admission because of a lack of

10

shared research interests is pretext for discrimination. Professor Joseph testified that Ph.D. students are not required to exactly match the faculty's research interests.

Plaintiff further argues that OSU failed to offer her the option of being admitted into the Master's program even though it concluded she was not a good fit for the Ph.D. program. Plaintiff also relies on her admission to Kent State University's school psychology program as evidence that OSU's denial based on an alleged interest in counseling was pretextual. Plaintiff also notes that OSU uses a "Graduate Admissions Decision Form" as part of the admissions process. The form provides three general reasons with correlating specific reasons for denying an applicant admission. Rather than selecting "Cannot Accommodate: An interest or research area that cannot be accommodated," Professor Joseph selected "Deny General." In her deposition, Professor Joseph could not explain why she made the selection she did. Had this been the real reason plaintiff was not selected, her explanation would have more properly been described as a interest or research that could not be accommodated.

### III. Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the absence or presence of a genuine dispute must support that assertion by either "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes

11

of the motion only), admissions, interrogatory answers, or other materials"; or "(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party may object that the cited material "cannot be presented in a form that would be admissible in evidence," and "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2); Fed. R. Civ. P. 56 advisory committee's note. If a party uses an affidavit or declaration to support or oppose a motion, such affidavit or declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

While the court must consider the cited materials, it may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3). However, "[i]n considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Revis v. Meldrum*, 489 F.3d 273, 279 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.*, 489 F.3d at 279–80 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

### IV.     Discussion

Plaintiff asserts claims of disability discrimination under the Americans with

Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131 *et seq*. and Section 504 of the

Rehabilitation Act of 1973, 29 U.S.C. § 794(a). Title II of the ADA states:

> No otherwise qualified individual with a disability shall, by reason of
> such disability, be excluded from participation in or be denied the benefits
> of the services, programs, or activities of a public entity, or be subjected to
> discrimination by any such entity.

Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified individual

with a disability . . . shall, solely by reason of his or her disability, be . . . subjected to

discrimination." 29 U.SC. § 794(a).

In the absence of direct evidence of disability discrimination, courts analyze such

claims under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411

U.S. 792 (1973). To establish a prima facie case, a plaintiff must demonstrate the

following:  (1) she has a disability within the meaning of the Act; (2) that she is

otherwise qualified for participation in the program; (3) that solely by reason of her

disability she was subjected to discrimination. Once a plaintiff has met the burden of

establishing a prima facie case, the burden shifts to the defendant to come forward with

a legitimate, nondiscriminatory reason for its action.

Here, defendant stipulates that plaintiff has established the first, second and

fourth steps of her prima facie case. OSU argues, however, that Sjöstrand cannot meet

her burden of establishing that defendant intentionally discriminated against her on the

13

basis of her disability when it did not admit her into the school psychology Ph.D. program.  Defendant further argues that even if plaintiff can establish a prima facie case of disability discrimination, she cannot meet her burden of demonstrating that OSU's legitimate, nondiscriminatory reasons for its action was pretextual. "An employee can show pretext by offering evidence that the employer's proffered reason had no basis in fact, did not actually motivate its decision, or was never used in the past to discharge an employee." *Smith v. Chrysler Corp.*, 155 F.3d 799, 805-806 (6th Cir. 1998).

Ms. Sjöstrand maintains that the evidence creates an inference that OSU denied her admission in to the school psychology program because of her disability. Plaintiff maintains that her telephone conversations with Professor Joseph and Mr. Graham are admissible evidence that create an inference of discriminatory intent. Plaintiff argues that "rarely will there be direct evidence from the lips of the defendant proclaiming his or her . . . animus. . . . " *Smith v. Chrysler Corp.* 155 F.3d 799, 805 (6th Cir. 1998)(quoting *Robinson v. Runyon*, 149 F.3d 507, 512-14 (6th Cir. 1998).

Timothy Graham is the Assistant Director of Graduate and Professional Admissions. Mr. Graham testified in his deposition that he did not review the applications, he merely creates the file. Doc. 27-6 at PageID 323; Graham Dep. 10:10-13. He has no further role until he receives an acceptance or denial from the specific program. *Id.* at PageID 324; Graham Dep. 11:9-12. When plaintiff telephoned Mr. Graham, he pulled her file and relayed to her the comments from the faculty and referred her to Dr. Joseph for further information. *Id.* PageID 327; Graham Dep. 14:11-

14. Although Mr. Graham noted that plaintiff's undergraduate GPA and GRE scores were strong, *Id.* at PageID 332; Graham Dep. 19:14-16, he had no knowledge as to why she was denied admission. Mr. Graham's lack of knowledge as to why plaintiff was denied admission provides no evidence that plaintiff's denial was because of disability discrimination.

Each applicant to the school psychology program was asked to submit answers to questions rather than submit a personal statement. In two of her responses, Ms. Sjöstrand referenced her personal experiences with Crohn's disease:

1.      Why do you want to become a school psychologist?

I was diagnosed with Crohn's Disease when I was six years old. I was subject to erratic bouts of illness, and accompanying medical tests, procedures, and treatments, all of which happened while I was growing up and trying to negotiate going to school. For many years, I wanted to be a pediatric gastroenterologist because I believed my experiences with Crohn's would be a great benefit to the medical profession, allowing me to empathize with my patients. When I was in my junior year of high school, however, I became very interested in psychology. I realized that managing the psychological effects of my varied experiences (surgery, extended hospitalizations, various treatments, pain management, etc.) were integral to my wellbeing as managing my disease was. This epiphany led me to believe that I could couple the enjoyment I derived from working with children (I have worked with the children's department at my church for the past four and a half years) with what I had gleaned as a student with Crohn's. I believe that the years a child spends within the educational system are some of the most important in that child's life. It is during these years that each child learns how to adapt to various situations, interact with people, and react appropriately to life events. I believe my personal experiences married to formal training could be of great benefit to children during a critical time in their development.

. . .

15

10.     How do you respond to stress and novel situations?

Over the years, I have learned that intense stress can trigger a Crohn's episode. This realization has required that I develop various coping mechanisms. I have taken up several hobbies and have learned to entertain myself with various activities. By nature, I am an easygoing person and am able to "go with the flow" very easily; learning how to manage my disease effectively has simply made me more so.

(Doc. 27-8 at Page ID 346, 347, 349). In her deposition testimony, Ms. Sjöstrand testified that her interviews with Dr. Radliff and Dr. Joseph each lasted approximately 20 minutes. Doc. 20, Sjöstrand Dep. 40:12-14. During the interviews, plaintiff was asked the same or very similar questions to those in the applicant questionnaire. Plaintiff testified that Dr. Radliff elaborated on the questioning when she reached question 10. She mentioned that plaintiff had been diagnosed with Crohn's disease and inquired whether it would be a problem for her education and whether she could handle the stress of graduate school. *Id.* at 43:18-23. Plaintiff responded by telling Dr. Radliff that she had not had an episode since high school and that she had learned how to manage her stress. *Id.* at 44:1-4. In her interview with Dr. Joseph, Dr. Joseph also asked the same or similar questions provided in the applicant questionnaire. When she reached question 10, Dr. Joseph also elaborated on the question and asked plaintiff whether she was concerned that the program would be too stressful for her or whether she believed the stress of graduate school would cause a flare-up of her illness. *Id.* at 45: 14-24 - 46:1-6.

Defendant argues that the questions posed by Drs. Radliff and Joseph are insufficient to make out a prima facie case that plaintiff was denied admission to the program because of her disability. Rather, OSU maintains that Ms. Sjöstrand voluntarily disclosed her health condition in responding to the applicant questions. OSU points to the EEOC regulations enforcing the ADA applicable to the employment setting, which make it "unlawful for a covered entity to . . . make inquiries as to whether an applicant is an individual with a disability or as to the nature or severity of such disability." 20 C.F.R. § 1630. Defendant notes that this regulation does not apply to public programs under Title II of the ADA, but OSU relies on the regulations to demonstrate what inquiries are considered permissible under the ADA.

Questions concerning why an applicant wants to be a school psychologist and how she handles stress and novel situations are not likely to elicit information considering an applicant's disability. A question is not disability-related if there are many possible answers and only one of those possible answers would reveal disability-related information. Once plaintiff disclosed her experience with Crohn's disease. It was not improper for the professors to question her about it. Plaintiff's assertion that Professors Joseph and Radliff focused their interviews on her ability to participate in the program given her Crohn's disease is not supported by deposition testimony. Although each professor asked her a follow-up question to her response to question number 10, plaintiff's characterization of these questions in her deposition testimony does not constitute evidence that OSU rejected her because of her disability. Plaintiff attempts to

17

bolster her position by emphasizing the fact that neither of the professors who interviewed her asked her questions about their stated reasons for denying her admission. Defendant maintains that plaintiff was not selected for admission because of concerns that was she interested in school counseling rather than school psychology and that she selected Professor Granello as a mentor even though she was not a faculty member in the school psychology program.

Plaintiff's reliance on her qualifications also does not give rise to an inference of disability discrimination. Plaintiff has not submitted evidence demonstrating that her qualifications were so superior to those of the other candidates to be sufficient to infer that she was denied admission to the program due disability discrimination, particularly in light of the fact that there is no other probative evidence of discrimination:

> Whether qualifications evidence will be sufficient to raise a question of fact as to pretext will depend on whether a plaintiff presents other evidence of discrimination. In the case in which a plaintiff does provide other probative evidence of discrimination, that evidence, taken together with evidence that the plaintiff was as qualified as or better qualified than the successful applicant, might well result in the plaintiff's claim surviving summary judgment. . . . [I]n the case in which there is little or no other probative evidence of discrimination, to survive summary judgment the rejected applicant's qualifications must be so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former. In negative terms, evidence that a rejected applicant was as qualified or marginally more qualified than the successful candidate is insufficient, in and of itself, to raise a genuine issue of fact that the employer's proffered legitimate, non-discriminatory rationale was pretextual.

18

*Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 626 -627 (6th Cir 2006). The evidence does not support a finding that a reasonable decision maker would have found plaintiff to be significantly better qualified than the other applicants. OSU has stipulated that Ms. Sjöstrand met the minimum qualifications to be considered for admission to the school psychology program. OSU maintains, however, that Ms. Sjöstrand's assertion that she outshone all the other candidates is not supported by the evidence. Plaintiff achieved a 550 qualitative score and 560 verbal score for a combined average GRE score of 555. The applicant with the highest GRE combined average score had a 707, and this applicant was not interviewed. The next highest scores of the applicants were 590 followed by a score of 577. Ms. Sjöstrand's emphasis on the fact that she completed her undergraduate degree in only two and a half year is not evidence that she was significantly more qualified than the other applicants. The applicants were simply not evaluated on this factor. Although plaintiff asserts that she had the highest GPA of the nine applicants, in actuality she shared that distinction with another applicant. Five of the remaining eight applicants all achieved GPAs of 3.5 or better. *See* doc. 33-3. As a result, plaintiff's qualifications do not give rise to an inference of disability discrimination.

Plaintiff also relies on statements concerning the rigors of graduate study as evidence of a discriminatory attitude towards person with disabilities. Testimony that graduate school should come first and that students were expected to attend class cannot be said to give rise to an inference of disability discrimination. All applicants were questioned regarding their ability to deal with stress (Doc. 27-8 at Page ID 349).

19

None of the statements concerning the intensity or challenging nature of the program can be said to discriminatory in nature.

The Court finds that plaintiff has not demonstrated a prima facie case of disability discrimination; however, even if she had, the Court further finds that Ms. Sjöstrand has not demonstrated that OSU's legitimate, nondiscriminatory reason for denying her admission were pretextual. If an employer articulates a legitimate reason for its action, the burden of production shifts back to the plaintiff to demonstrate that the employer's reason is pretextual. There are three primary methods by which plaintiffs generally show pretext: by showing that the proffered reason, (1) had no basis in fact; (2) was insufficient motivation for the employment action; or(3) did not actually motivate the adverse employment action. *Smith v. Chrysler Corp.*, 155 F.3d 799, 805-06 (6th Cir. 1998)

OSU asserts that the faculty's decision to deny Ms. Sjöstrand admission to the program was because she did not fit with the program. OSU based this decision on five factors. First, plaintiff identified a faculty member from the School Counseling Program rather than the School Psychology Program as her desired mentor. Second, she expressed in interest in counseling adults, which School Psychology Ph.D. students are not trained to do. Third, Ms. Sjöstrand failed to identify anything specific concerning the mission of OSU's program. Fourth, plaintiff had limited experiences working with children. Fifth, Ms. Sjöstrand had limited research experience.

Here, plaintiff has not come forth with any evidence that OSU's reasons for not accepting her had no basis in fact. Plaintiff points to the acceptance of Ms. Evanovich. Plaintiff maintains that Ms Evanovich did not meet the minimum requirements for admission and she did not intend to work with students in academic setting. Ms. Evanovich expressed her interest in working with young adults with emotional disorders to increase appropriate behavior in social contexts. Plaintiff maintains that this goal does not coincide with the role of a school psychologist, but nevertheless Ms. Evanovich was admitted. Although Ms. Evanovich indicated that she wanted to work with your adults and/or young professionals, she also indicated that she hoped to work in a school or community center. Doc. 33-19 at PageID 564. Defendant relies on the affidavit of Dr. Joseph to demonstrate that Ms. Evanovich coincided with Dr. Joseph's research interests. Dr. Joseph indicated that both she and Ms. Evanovich had a special education background. Dr. Evanovich's application materials reflected that she had research experience and an interest in academic intervention, which coincided with Dr. Joseph's background. Dr. Joseph stated that during her interview with Ms. Evanovich, it was clear that their research interests matched, and Dr. Joseph was assigned as Ms. Evanovich's advisor. Doc. 41-4 at PageID 844. Plaintiff also argues that Ms. Evanovich's application contained serious omissions and that she did not meet the minimum qualifications required to gain admission to the program because she had a GRE score below 500. Defendant noted however, that a minimum score of 500 quantitative/500 verbal on the GRE to be considered for a graduate associateship, but it was not

21

necessary to achieve a score above 500 to be admitted to the program. *See* doc. 27-1 at PageID 258. Plaintiff's assertion that Ms. Evanovich's interests did not fit with the school psychology program is not supported by any evidence. To the contrary, the uncontroverted evidence demonstrates that Ms. Evanovich's interest coincided with those of the faculty.

Plaintiff also has not provided any evidence demonstrating that OSU's proffered reasons did not actually motive the decision to not accept her application.

Plaintiff argues that OSU failed to make a reasonably informed and considered decision. OSU maintains that it relied on plaintiff's responses to the written application questions and responses during the interview. Defendant maintains that it had no obligation to ask Ms. Sjöstrand to clarify her responses. Plaintiff likens Professors Jospeh and Radliff's failure to address alleged concerns to an employer who fails to investigate allegations of misconduct prior to terminating the employee. These situations are simply not analogous. An employer's obligation to make a "reasonably informed and considered decision" cannot be imposed on a university when making decisions regarding applicants. *May v. Pilot Travel Centers, LLC,* 2007 WL 108001, at * 7 (S.D.Ohio 2007)(quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir.2001)). It was not incumbent on OSU to investigate further into plaintiff's interests. Plaintiff provides no case support for her assertion that a higher education institution is obligated to investigate and seek clarification for any concerns faculty may have regarding a candidate's application materials. The application process provided

22

plaintiff with the opportunity to impress on the faculty her desire to attend the OSU School Psychology Ph.D. program. All the applicants were provided the opportunity to answer the same questions and to put their best case forward for why they should be chosen. Ms. Sjöstrand's responses, including her selection of an advisor who was not a school psychology faculty member, failed to convince the decision makers that she was a good fit with the program. Plaintiff has no evidence which contradicts this finding. Plaintiff's reliance on her eventual acceptance into the Kent State University program and the National Association of School Psychologists' acceptance of her proposal is not evidence that defendant's decision to not accept plaintiff was unreasonable. Here, the uncontroverted evidence demonstrates that the decision makers interpreted plaintiff's application in a reasonable manner. While it is true that some of plaintiff's statements support an interest in pursuing school psychology, other statements could reasonably lead the faculty to conclude that plaintiff's interests pertained more to school counseling rather than school psychology. The question is not whether the faculty were correct in making this assumption, but whether they had an honest belief in the non-discriminatory reason for their action. Plaintiff's statements, coupled with her selection of a advisor who was not a member of the school psychology faculty, are evidence that the decision not to admit plaintiff based on a perceived lack of fit was made reasonably and honestly by defendant. Plaintiff has failed to come forth with any evidence demonstrating that defendant's legitimate non-discriminatory reasons for its action were pretextual.

**V.      Conclusion**

For the reasons stated above, defendant The Ohio State University's ("OSU")

September 17, 2012 motion for summary judgment (doc. 27) is GRANTED.


s/Mark R. Abel
United States Magistrate Judge