IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Caitlin Sjöstrand,                              :

                Plaintiff          :        Civil Action 2:11-cv-00462

    v.                                          :

The Ohio State University,                 :        Magistrate Judge Abel

                Defendant       :

# ORDER

This matter is before the Court on plaintiff Caitlin Sjöstrand's August 21, 2014 motion *in limine* (doc. 63) and defendant The Ohio State University's ("OSU") August 21, 2014 motion *in limine* (doc. 62).

**<u>Plaintiff's Motion.</u>** Plaintiff seeks an order precluding defendant from calling Professor Darcy Haag Granello, L. Scott Lissner or Eric Lauterback as witnesses at trial because defendant failed to disclose them as witnesses until August 19, 2004. She also seeks to preclude defendant from introducing documents related to Lissner's communications with Dr. Donna Pastore that were not produced until August 21, 2014.[1]

Defendant argues that none of the three witnesses plaintiff seeks to exclude are "secret" witnesses sprung on Sjöstrand at the last minute. Plaintiff identified Professor

---

[1]Plaintiff also sought to preclude the introduction of evidence or testimony regarding her plaintiff's records from Kent State University, but defendant has withdrawn its subpoena for those records.

Granello as her preferred mentor. OSU maintains that it supplemented its disclosures in an abundance of caution because Rule 26(a)(1) suggests that formal supplementation of the initial disclosures is not required when a witness is identified through some other means, such as a disclosure to a deposition. OSU also maintains that plaintiff will not be prejudiced because she was well aware of these OSU employees and chose not to take their depositions. OSU argues that plaintiff's strategic choices not to pursue certain discovery should not preclude from OSU calling these witnesses.

　　　Requirements of Rule 26(a)(1) and Rule 26(e). Rule 26(a)(1)(i) requires the parties to disclose "the name . . . of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims and defenses . . . ." Rule 26(a)(1)(ii) requires the parties to disclose "all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses . . . ." Rule 26(e) provides:

> (1) In General. A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
> > (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
> > (B) as ordered by the court.

When there is a duty to disclose that was not met, Rule 37(a), Fed. R. Civ. P. treats "an evasive or incomplete disclosure . . . as a failure to disclose." Rule 37(a)(4), Fed. R. Civ. P. Further, any supplementation required by Rule 26(e)(1)(A) must be done "in a timely manner."

Here OSU argues that under Rule 26(e)(1)(A) supplementation is not required because the "information [was] otherwise . . . known to the other party during the discovery process . . . ."

The Civil Rules Advisory Committee's 1993 Notes to Rule 26(e) state, in relevant part:

> The obligation to supplement disclosures and discovery responses applies whenever a part learns that its prior disclosures or responses are in some material respect incomplete or incorrect. There is, however, no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition or when an expert during a deposition corrects information contained in an earlier report.

The mere mentioning of a potential witness's name during the course of discovery is insufficient demonstrate that the opposing party knew the party who failed to disclose the witness might call that person to testify at trial. On the other hand, when a party has good reason the know that a person has knowledge supporting the opposing party's litigation position, that party is relieved of the duty to disclose that person as a potential witness. For example, in *Charvat v. EchoStar Satellite LLC,* 2009 WL 2949294 (S.D. Ohio September 11, 2009), the issue was whether EchoStar had made telephone calls to

Charvat. EchoStar identified a vice president as a witness knowledgeable about its telephone policies. However, to support its motion for summary judgment, it used the affidavit of a different vice president. Plaintiff Charvat knew that the vice president signing the affidavit was knowledgeable about the subject matter because he signed EchoStar's response to plaintiff's interrogatories about those telephone practices. *Id.*, at *1. The court held that when he signed the interrogatories the vice president certified to the plaintiff that he had knowledge about his companies telephone practices and policies. *Id.*, at *3.

I read the exception in Rule 26(e)(1)(A) to mean that if deposition testimony or response to written discovery is the functional equivalent of a 26(a)(1) disclosure, then there is no duty to supplement. Rule 26(a)(1) requires disclosure of an individual if (1) that individual is "likely to have discoverable information" (2) "that the party may use to support its claims and defense." When those conditions are met, the party must disclose that individual's name and (3) "the subjects of that information." I now turn to a consideration of what knowledge plaintiff had that defendant might offer testimony for these witnesses at trial.

**Granello.** Plaintiff identified Professor Granello as a possible mentor in her application to the School Psychology program. Professor Granello was not a faculty member of the School Psychology program, and defendant points to plaintiff's selection of her as a possible mentor as part of the explanation for the belief that plaintiff's interests were not aligned with that of the program. Plaintiff argues that Professor

4

Granello has no personal knowledge concerning about her application, interviews, denial of admission or complaints that OSU discriminated against her. Ms. Sjöstrand has admitted throughout the course of this litigation that Professor Granello is a faculty member of the School Counseling program, not School Psychology. Plaintiff maintains that there is no need to have Professor Granello testify at the trial. Her testimony would only confuse the jury. Plaintiff maintains that OSU has repeatedly emphasized that Professor Granello is not involved with the School Psychology program. Therefore, plaintiff argues, her testimony cannot be relevant.

Defendant did not respond to plaintiff's relevancy argument, but plaintiff cannot claim surprise or lack of knowledge that Professor Granello had information relevant to the disputed material facts for trial, such as whether she could serve as a mentor for a student in the School Psychology program. Accordingly, plaintiff's motion is DENIED with respect to Granello on the following CONDITIONS. Defendant is ORDERED to provide plaintiff's counsel with a written proffer of Granello's testimony on or before **September 15.** Her trial testimony will be limited to that proffered. Further, should plaintiff want the opportunity to depose Granello, defendant shall make her available for deposition at the date and time specified by plaintiff's counsel.

**Lissner.** Mr. Lissner serves as the Americans with Disabilities Act Coordinator for The Ohio State University. Defendant maintains that emails between Lissner and Pastore disprove plaintiff's summary judgment argument that Pastore's edits of her letter to Sjöstrand that eliminated explanations for the decision to deny her application

5

and added others were"shifting" explanations that demonstrated pretext. Instead, the emails and drafts show that Pastore was following the advice of Lissner. Defendant maintains that Lissner's emails "bring a particular *lay* perspective to bear that is not duplicated by Pastore's isolated explanation of the emails." Doc. 67 at PageID# 1159 (emphasis added).

Plaintiff argues that the deposition testimony of Pastore and the documents produced by OSU gave every indication that Mr. Lissner had no independent knowledge of the circumstances surrounding the denial of Ms. Sjöstrand's application and he provided only general advice regarding what should be included in the response letter.

Rule 602 of the Federal Rules of Evidence provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Defendant does not contend that Mr. Lissner has personal knowledge regarding the facts underlying plaintiff's claim. Instead, Mr. Lissner was asked to provide advice on drafting a response to plaintiff's request for an explanation of why her application was denied based on his *expertise* as the Americans with Disability Act Coordinator. Any knowledge he had of the underlying allegations were apparently provided to him by Pastore in her email messages to him. Mr. Lissner's testimony is not necessary to introduce the emails. Pastore sought his advice and she can testify to that fact. She can also testify as to whether she made changes to the letter she drafted upon receiving his advice. With respect to this case, Mr. Lissner could

6

testify that his advice was sought by Pastore and he provided his *opinion* as to how she should proceed.

Defendant apparently believes Lissner's testimony is necessary to respond to plaintiff's anticipated argument that the drafts of Pastore's letters demonstrate that the reasons advanced by OSU for denying Sjöstrand's application were pretextual. Without deciding whether Lissner's proposed testimony is relevant to any material disputed factual issue for trial or whether it would be merely cumulative, plaintiff's motion *in limine* is DENIED as to Lissner because plaintiff knew from the emails produced that he corresponded with Pastore about what she should say in her letter to Sjöstrand. The denial is subject to the following CONDITIONS. Defendant is ORDERED to provide plaintiff's counsel with a written proffer of Lissner's testimony on or before **September 15.** His trial testimony will be limited to that proffered. Further, should plaintiff want the opportunity to depose Lissner, defendant shall make her available for deposition at the date and time specified by plaintiff's counsel.

**Lauterback.** Lauterback is the Web Services Manager for the OSU College of Education and Human Ecology. His duties include overseeing the maintenance of the webpage for the School Psychology program. In its reply in support of its motion for summary judgment, OSU relied on Lauterback's affidavit which stated that the website listing the School Psychology program faculty had remain unchanged from at least July 30, 2009 through November 13, 2012. Attached to the affidavit was the webpage as it existed during that time frame. Professor Granello was not listed as a faculty member

7

of the School Psychology program on the webpage. *See* docs. 41-2 & 41-3. Since defendant relied on his affidavit to support its motion for summary judgment, plaintiff cannot claim surprise or lack of knowledge that Lauterback had information relevant to the disputed material facts for trial, plaintiff's motion is DENIED with respect to Mr. Lauterback on the following CONDITIONS. Defendant is ORDERED to provide plaintiff's counsel with a written proffer of Lauterback's testimony on or before **September 15.** His trial testimony will be limited to that proffered. Further, should plaintiff want the opportunity to depose Lauterback, defendant shall make her available for deposition at the date and time specified by plaintiff's counsel.

Supplemental production of emails. Plaintiff also objects to the introduction of emails between Lissner and Pastore that were not produced until August 21, 2014. Defendant maintains that there is no evidence that OSU was acting in bad faith when it disclosed the emails. OSU discovered the emails on August 20, 2014, and it supplemented its Rule 26(a) disclosures the following day. The fact of the matter is, however, that there is no evidence concerning this matter the Court. OSU failed to attach any affidavit explaining why the emails were not produced during discovery, where they were located, or how new counsel located them. Plaintiff's motion to exclude the emails that fell within her document requests but were not produced during discovery is GRANTED because OSU's Rule 26(e) supplementation was not timely and it has advanced no explanation why these emails were not produced during discovery in response to plaintiff's document requests.

8

Defendant's Motion. OSU moves for an order excluding (1) certain testimony and other evidence related to OSU's Master's-level School Psychology program; (2) references to Crohn's disease as a "disability" or to plaintiff as "disabled"; (3) any negative inference regarding the fact that the OSU School Psychology program faculty members discarded their interview notes prior to plaintiff's complaint; (4) any reference to plaintiff as a "victim"; (5) any reference to these motions in limine, the motion for summary judgment, OSU's change of counsel, or the appeal in this matter; (6) any reference to or evidence of OSU's insurance coverage; (7) any reference to or evidence of other disability discrimination lawsuits or claims against OSU; (8) any reference to or evidence of OSU's financial position; (9) any reference to, evidence of or argument that the jury "send a message" or act as the "conscience of the community"; (10) any reference to or argument that the jury treat plaintiff as a member of their family or a friend, or similar comments, for purposes of deliberation; (11) any reference to, evidence of or argument that plaintiff was recruited to another school's Master's-level program; and (12) any reference to alleged statements by unidentified graduate students.

Testimony regarding the OSU Master's Program. OSU moves to exclude any testimony or other evidence concerning Sjöstrand's purported interest in the Master's program in school psychology at OSU. On the June 15, 2012 errata sheet to her deposition transcript, Sjöstrand asserted for the first time that had she been offered admission to the Master's program when her application to Ph.D. program was denied,

9

she would have accepted. OSU maintains that this evidence is irrelevant, unduly prejudicial and a waste of the jury's time. Whether Sjöstrand might have been interested in the Master's program, a program that she never applied for, makes it nor more or less likely that her rejection from the Ph.D. program was the result of discrimination. Permitting plaintiff to offer this testimony could mislead the jury into believing that OSU had an obligation to offer Sjöstrand admission into the Master's program.

> As my September 25, 2012 Order stated:

> Even if she would have accepted a position in the Master's program, her statement of her willingness to do so after the fact is not relevant to the decision-making process underlying her claim. Although she indicated in her deposition that she asked if she could be considered an applicant to the Master's program, her request was made after all the slots in the Master's program had been filled. Plaintiff was never considered as applicant for the Master's program.

Doc. 28 at PageID# 401.

Plaintiff argues that she should not be precluded from offering any testimony regarding her conversations with Professor Joseph after she was denied admission or her willingness to accept admission into the Master's program. She maintains this testimony is relevant to proving whether OSU's alleged legitimate, nondiscriminatory reasons for denying her admission were pretext for discrimination. Sjöstrand contends that she made repeated inquiries regarding the reasons for her denial, her options for appealing the denial, and what she needed to improve if she applied in the future. Sjöstrand asked Dr. Joseph if she could take classes without being admitted and questioned whether the classes could be applied to her course work if she was admitted

10

at a later date. She was extremely persistent in her efforts to be admitted to the program, and despite her inquiries, no one suggested that she apply for the Master's program. Plaintiff relies on the deposition testimony of Dr. Joseph and Dr. Miranda, both of whom testified that they could advise an applicant to the Ph.D. program to apply for or accept admission to the Master's program.

My September 25, 2012 Order specifically dealt with plaintiff's motion seeking the application materials of the Master's program applicants to determine whether the applicants mentioned the mission of the program and/or named a faculty member outside of the school psychology program as a mentor. The application materials were not relevant because plaintiff did not apply to the Master's program and she was never considered for that program during the application period.

Here plaintiff points to the testimony of Dr. Joseph and Dr. Miranda that if they determined that an applicant was a better fit for the master's program they could advise her to apply for that program. (Joseph Dep., 110-11; Miranda Dep. 43-44.) Plaintiff's argument is that she could have applied to that program if professors had invited her to do so and that their failure to do so is evidence of pretext. Plaintiff is permitted to put on evidence concerning her theory that the failure to consider her for the Master's program is evidence of pretext. My September 25, 2012 ruling does not prevent plaintiff from arguing that she could have been offered a spot in the Master's program and the failure to do so demonstrates pretext. Further, plaintiff may testify about each reason Dr. Joseph advanced during her telephone conversation with the professor explaining

11

why her application for the doctoral program may have been denied. (Plaintiff's April 8,

2010 letter to Pastore, Sjöstrand Dep., 122-25, Exh. 12, at p. 2.)

Defendant's motion is DENIED with respect to this testimony.

References to Crohn's Disease as a "Disability".  OSU argues that because

proving that plaintiff has a "disability" is part of Sjöstrand's burden of proof, it would

be inappropriate for any witness, including her, to testify regarding the applicability of

statues or regulations or to define any legal terms contained therein. OSU maintains

that the question of whether Sjöstrand was disabled under the applicable law is one for

the jury, and any witness's conclusions regarding her status as disabled is inadmissible

on the basis that they invade the province of the jury.

Plaintiff argues that a blanket order precluding Sjöstrand from referring to

Crohn's disease as a disability or to herself as disabled is too restrictive because her

decision to become a school psychologist was based on her experiences as a student

with a disability. She wanted to work with children with disabilities as a result of her

lifelong management of her own disability. Plaintiff maintains that excluding any

reference to Crohn's disease as a disability or as to herself as disabled will improperly

restrict her ability to testify regarding her reasons she applied to the program. Plaintiff

argues that although "disability" and "disabled" are legal terms, the words also have

meaning in everyday discourse.

As plaintiff argues, the jury instructions will present the legal definition of

"disability" under the ADA. The jury will be charged with determining whether

12

Sjöstrand is disabled with the definitions provided, and the use of the terms "disability" and "disabled" by witnesses is unlikely to cause juror confusion. If requested, I will instruct the jury that Ms. Sjöstrand's reference to Crohn's disease as a "disability" and to herself as "disabled" is not evidence they may consider when determining whether plaintiff has proven by the greater weight of the evidence that she is disabled. The Americans with Disabilities Act defines what is a "disability." That definition and the evidence offered by the parties regarding whether Ms. Sjöstrand's Crohn's disease is a disability, such as the limitations her medical condition imposes on her ability to perform activities of daily living, controls their decision, not Ms. Sjöstrand's statement that she considers herself disabled.

Defendant's motion is DENIED with respect to this testimony.

Destruction of Faculty Interview Notes. OSU seeks an order precluding plaintiff from arguing or offering evidence suggesting that a negative inference may be drawn against OSU because the School Psychology faculty members discarded their notes from the February 26, 2014 group and individual interviews including those related to plaintiff.  OSU asserts that the three professors routinely discarded their notes within no more than two weeks after they made their decisions about which applicants were admitted to the program. OSU argues that in circumstances where documents clearly have been discarded in good faith, the Court should exclude any references related to the discarded documents since any reference to their destruction is likely to have a substantially unfair prejudicial impact that taints the judgment of the jury.

13

Plaintiff responds that she is not seeking an adverse inference regarding the destruction of the interview notes, but she maintains that she should be able to present evidence regarding the notes at trial. Plaintiff wants to question the faculty about their interview notes, and OSU may question the witnesses about their normal practice regarding the destruction of the notes. Sjöstrand is unwilling to concede that the notes were disposed of in a routine matter because other documents related to her application were retained. According to plaintiff, the notes were important documents that likely contained the contemporaneous thoughts and mental impressions of each interviewer.

Both sides rely on *Louisville Gas and Electric Company*, 420 F. Supp. 2d 764 (W.D. Ky. 2005). In *Louisville Gas*, the owner of electrical generating unit filed suit against the maintenance contractor and welding subcontractor to recover damages arising from a broken fan shaft on its electrical generating unit. Following the inspection and preparation of an expert report, the broken fan shaft was misplaced and believed to be accidentally discarded by the expert consultant. The defendants moved to dismiss the complaint due to the spoliation of the fan shaft evidence. The court found no evidence that the plaintiff had intentionally disposed of the evidence and concluded that the conduct did not warrant a negative inference based on spoliation. Instead, the court formulated a jury instruction that allowed the jury to consider whether the inability of defendants to inspect the fan shaft prevented them from rebutting a particular element of plaintiff's claim, then the jury could decide against plaintiff to that particular element. The court further stated:

14

Defendants may not argue that simply because LG & E lost the fan shaft, the jury should render a verdict in favor of Defendants. They may argue that their inability to inspect the shaft prevented them from proving their theory of the case or prevented them from rebutting LG & E's theory of the case. LG & E may not argue that Defendants contributed in any way to the lost evidence or that the second piece was suitable for inspection. LG & E may argue that Defendants' inspection would not have lead to a different result and that whatever theory Defendants proposed is so improbable that any testing of the missing part could not have proved it true.

*Louisville Gas and Elec. Co. v. Continental Field Systems, Inc.*,  420 F. Supp. 2d 764, 768 (W.D. Ky. 2005).

Here, there is no spoliation of evidence. The interview notes were destroyed prior to any communication for plaintiff indicating that she suspected that she was refused admission to the program because of disability discrimination. OSU had no duty to preserve the notes prior to Sjöstrand's email.

Defendant's motion is DENIED to the following extent. Plaintiff's counsel may ask the professors whether they have notes from their interviews of Ms. Sjöstrand. I reserve ruling on what argument(s) plaintiff may make regarding the absence of the notes. Any such argument must be relevant to a material disputed issue of fact.

Use of the Word "Victim". OSU argues that any reference to plaintiff as a "victim" incorrectly implies the existence of a criminal legal proceeding and would improperly inflame jurors and encourage them to violate their oath not to let bias, sympathy or prejudice play a part in their deliberation.

The use of the term "victim" is unlikely to cause jurors to confuse this case with a criminal proceeding. Defendant's motion is DENIED with respect to this testimony.

References to Summary Judgment Briefing, the Appeal, and Change in Counsel. OSU argues that any reference to the filing of dispositive motions, the appeal, or the motions *in limine* are not relevant to this case. OSU maintains that statements made in the briefing and argument of the motions and appeal are also not relevant and would pose a significant theory of confusing and inflaming the jury.

Because the procedural history of this case is not relevant to the issues to be decided, OSU's motion is GRANTED with respect to this testimony.

OSU's Liability Insurance. Plaintiff does not oppose defendant's motion with respect to OSU's liability insurance.

Other Claims of Disability Discrimination. Plaintiff does not oppose defendant's motion with respect to other claims of discrimination involving OSU as long as OSU does not offer evidence or testimony that it has admitted, accommodated, or been involved with other disabled students or employees. OSU, however, does not agree to limit its testimony in the manner suggested by plaintiff.

OSU's motion is GRANTED with respect to this testimony.

OSU's Financial Position. Plaintiff does not oppose defendant's motion with respect to OSU's wealth, size or financial position. OSU's motion is GRANTED with respect to this testimony.

Requests that the Jury "Send a Message" or Act as the "Conscience of the Community" or View Plaintiff as a Family Member. OSU argues that any reference or argument that the jurors should "send a message" to OSU or act as the "conscience of the community" is excludable under Fed. Evidence. R. 403 because they are inherently prejudicial and urge the jury to render its verdict based on passion and prejudice. Defendant also objects to asking the jury to treat plaintiff as a family member or friend for purposes of their deliberations or other "Golden Rule" style of arguments.

Plaintiff responds that she does not intend to use the phrases objected to by OSU, but she does intend to discuss the broad remedial purpose of the ADA and Rehabilitation Act, including Congress's 2008 amendments, which expanded the definition of "disability" in response to Supreme Court decisions narrowly defining that term. Similarly, plaintiff intends to discuss the jury's role in remedying unlawful discrimination rather than making any "Golden Rule" style of arguments.

OSU's motion is GRANTED with respect to this testimony.

Evidence that KSU Recruited Plaintiff. Ms. Sjöstrand testified that Kent State University ("KSU") actively pursued her for its school psychology program, but defendants maintains that she never identified the individuals who were recruiting her. Consequently, it was impossible for OSU to determine the truth of that statement. As a result, OSU maintains that plaintiff should be prohibited from testifying about her "recruitment" at trial. OSU also maintains that this testimony does not show that it is more or less likely that OSU discriminated against her.

17

Plaintiff argues that she should be permitted to testify, as she did on deposition, that before she applied to be admitted a KSU coordinator gave her positive feedback and encouraged her to apply and that within six hours of being interviewed she received an email accepting her into the program. She maintains that OSU never asked her who recruited her or requested documentation that she specifically identified during her deposition. Plaintiff argues that the fact that KSU actively recruited her is relevant to show that she knew the difference between school counseling and school psychology and undermines OSU's alleged legitimate, nondiscriminatory reason for denying her admission.

In its reply brief, OSU asserts that its requests for production of documents asked plaintiff to produce any and all written communications, including emails, discussing or relating to her claims in this action. In response, plaintiff did not produce any emails from KSU. When defendant attempted to obtain the information directly from KSU, plaintiff filed a motion to quash the subpoena.

I reserve ruling on defendant's motion *in limine* as to Sjöstrand's testimony regarding her acceptance to the KSU program. At trial, I will hear additional argument on relevance. They are two different programs, one a masters program and the other a doctoral. They may well have different criteria for evaluating applicants. That KSU actively recruited Sjöstrand is very tenuous evidence that she understood the difference between school counseling and school psychology and depends on facts that would require collateral testimony regarding her communications with KSU about both.

18

<u>Statements Made by Unidentified Students</u>. OSU objects to plaintiff testifying that she spoke with graduate students about the program and that she overheard a conversation between a graduate student and an unnamed applicant regarding the program. OSU argues that the statements are hearsay and no exception applies. OSU also maintains that the statements made by unidentified students and any implications therein cannot be imputed to OSU or the three faculty members who made the decision not to admit Sjöstrand to the program.

Plaintiff wants to offer Sjöstrand's testimony that she overheard a graduate student say, "oh, yes, you got to go to class even if you're at death's door." (Sjöstrand Dep., 56-57.) Plaintiff argues that she does not intend to introduce the testimony for the truth of the matter asserted, *i.e.*, students are actually required to attend class on their deathbed. Instead, she offers the statement for the student's state of mind, *i.e.*, the student's belief that the faculty expected students to attend class.

These statements are not relevant. A student's belief about the expectations of faculty do not shed any light on the decision making process with respect to plaintiff's application and cannot be used to reflect the attitudes or opinions of faculty.

OSU's motion is GRANTED with respect to this testimony.

<u>Conclusion</u>. For the reasons stated above, plaintiff Caitlin Sjöstrand's August 21, 2014 motion *in limine* (doc. 63) is GRANTED in part and DENIED in part, and defendant The Ohio State University's ("OSU") August 21, 2014 motion *in limine* (doc. 62) is GRANTED, in part, and DENIED, in part.

s/Mark R. Abel<br>
United States Magistrate Judge